UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | NO. 04-cr-10160-WGY |
| ) | |
| RAMON VILLA a/k/a ) | |
| LORENZO VELASQUEZ ) | |

### AFFIDAVIT REGARDING MOTION FOR LEAVE TO WITHDRAW

Now comes Michael F. Natola and hereby deposes and says:

1. I was appointed to represent the defendant in the above-referenced action on April 13 or 14, 2004.

2. On April 8 and April 13, 2004 I appeared before the Court on the defendant's behalf to represent him in an initial appearance and detention hearing.

3. On April 8th Assistant United States Attorney Kevin McGrath informed me that there was an outstanding warrant for the defendant's arrest out of the United States District Court for the Northern District of Georgia, in which the defendant was charged, in 2000, with an offense under Title 21 of the United States Code.

4. On April 8th the defendants in the case requested a continuance of the detention hearing.

5. On April 8th the only communication I had with the defendant was to review the complaint with him in the courtroom and explain the nature of the charge.

6. I did not speak with the defendant from April 8th to April 13th.

1

7. On April 13th Mr. McGrath gave me a photocopies of the following items that had been faxed to him from the United States Attorney's Office for the Northern District of Georgia: a) An affidavit of D.E.A. Special Agent Louis M. Andris dated September 28, 2000; b) Criminal Indictment numbered 1:00-CR-392-7 from the United States District Court for the Northern District of Georgia, naming John Doe, a/k/a "Ramon" as defendant numbered 7; c) A superseding indictment in case numbered 1:00-CR-392, again naming John Doe, a/k/a "Ramon" as defendant numbered 7; d) A Warrant for Arrest in case numbered 1:00-CR-392, issued on September 28, 2000 authorizing the arrest of Jose Andino, also known, among five a/k/a's, as Ramon Villa; e) A photograph purporting to be that of Jose Andino/Ramon Villa; and f) A set of fingerprints purporting to be those of one Ceasar Catillo, believed to be the defendant.

8. After Mr. McGrath gave me those items, I had a brief conversation in the courtroom with the defendant about the Georgia case, and particularly about the photograph that Mr. McGrath had given me.

9. I advised him that in light of the fact that there was a warrant for his arrest out of another federal district, there was no possibility that he would be released on conditions in the instant case.

10. At that time I also conferred with Mr. McGrath about where the defendant was likely to be prosecuted first, in Georgia or in Massachusetts.

11. Mr. McGrath opined that the United States Attorney's Office in Georgia would likely want the defendant transferred to the Northern District of Georgia to be prosecuted before the instant case.

2

12. I agreed with Mr. McGrath's assessment of the situation, and so advised the defendant.

13. I attended the detention hearing, at the end of which I, on behalf of the defendant, stipulated to detention without prejudice.

14. I had no further contact with the defendant until I saw him in court on June 9, 2004.

15. For the remainder of the month of April and early May I was consumed with preparing for a murder trial in the case styled *Commonwealth v. Callum Miller* then pending in the superior court for Essex County.

16. The trial of that case commenced on May 10, 2004, and the case ended with a jury verdict on May 20, 2004.

17. From May 10, 2004 through May 20, 2004 I was in my office only once, very briefly.

18. When I returned to my office on May 21, 2004 I had in my e-mail file an electronic notice from the Court of my partner, John McBride's, appearance for co-defendant, Anselmo Dominguez.

19. Prior to that time, I had not informed Mr. McBride that I had been appointed to represent the defendant.

20. Typically, in our small, three-lawyer practice, when conflicts over representation occur, we do not learn of them until after the attorney engaged last is retained.

21. Once such a conflict is discovered by us, we take immediate steps to resolve the conflict.

22. Such conflicts have occurred only two or three times in the time Mr. McBride and I have been partners.

23. I did not see or speak to Mr. McBride on May 21, 22, or 23, but next saw and spoke to him on Monday, May 24, 2004.

24. On May 24, 2004 I told Mr. McBride that I represented a co-defendant of Anselmo Dominguez in the instant case, and told him that, as I had done in the one and only similar instance in which I had been appointed under the Criminal Justice Act to represent a defendant and Mr. McBride was later retained to represent a co-defendant in the same case, I would file a motion for leave to withdraw.

25. I filed the instant <u>Motion for Leave to Withdraw</u> four days later, under cover dated May 28, 2004.

26. Although I employed the phrase "*inherent* conflict of interest" (emphasis added) in paragraph numbered 3 of that motion, I was not aware then, nor am I aware now of any actual conflict of interest in Mr. McBride's and my joint representation of the defendant and co-defendant, Dominguez.

27. My use of the word "inherent" was not well thought out, unintentional, and injudicious.

28. The word I ought to have employed instead of "inherent" is "potential," for, indeed, potential conflicts of interest arise in any joint representation situation.

29. On June 9, 2004 I spoke with the defendant for the first time since April 13th.

30. On that occasion I told him briefly about the issue surrounding my <u>Motion for Leave to Withdraw</u>, reviewed the indictment with him briefly, advising him

4

that it alleged the same offense as did the complaint, and I advised him to enter a plea of not guilty.

31. That was the only communication I had with the defendant on that date.

32. As of the date of this affidavit, I have not had any substantive communications of any kind whatever with the defendant concerning the substance of the instant case, and shall have none with him until and unless my <u>Motion for Leave to Withdraw</u> is denied.

33. I have, however, met with the defendant and advised him, in accordance with the teachings of <u>United States v. Foster</u>, 469 F.2d 1 (1st Cir. 1972), and <u>United States v. Donahue</u>, 560 F.2d 1039 (1st Cir. 1977), of the issues that may arise in joint representation situations, including that when two co-defendants are represented by lawyers from the same firm each defendant gives up his right to be represented by an attorney whose exclusive loyalty is to him and to him alone; that with respect to critical issues and important decisions such as whether to go to trial or plead guilty, whether or not to cooperate with the government in exchange for favorable treatment, what defense or defenses ought to be interposed, whether or not to testify, whether or not to call particular witnesses, and what questions to ask of witnesses on direct and cross examination, that what is in the best interests of one defendant may not be in the best interests of the other; that as a consequence of such issues one or both of the attorneys might be limited in discharging his duties to his client; and that other, unforeseen conflicts might arise in the course of the case.

Sworn to and subscribed under the pains and penalties of perjury this 14th day of June, 2004

*[signature]*
MICHAEL F. NATOLA
BBO No. 367580
McBRIDE and NATOLA
240 Commercial Street, Suite 2B
Boston, Massachusetts 02109
Tel. (617) 367-8844
Fax (617) 523-5153
E-mail Lazslo999@aol.com

## CERTIFICATE OF SERVICE

I, Michael F. Natola hereby certify that a true copy of the foregoing <u>Affidavit Regarding Motion for Leave to Withdraw</u> was served the above date upon the following persons in hand:

A.U.S.A Kevin McGrath

John C. McBride, Esquire

Ramon Villa

*[signature]*
MICHAEL F. NATOLA